Reed, J.,
delivered the opinion of the court.
This case is rather peculiar. It started in as an action of *395 replevin, and came out as a money demand for money received by the defendants to the use of the plaintiff and a settlement of accounts, but this is only one of its peculiarities ; there are several others.
Defendants’ counsel, at the close of plaintiff’s testimony, made a motion for a nonsuit, which was overruled. This is assigned for error, and most of the argument is devoted to the discussion of this assignment, contending that-the suit as brought in replevin was in no way sustained by the evidence. The position is correct. There was no evidence of an illegal taking or an illegal conversion.' Had the defendants been content to traverse the allegations in the complaint, the contention might have prevailed, and the refusal to grant a non-suit be held erroneous; but, after denying all the allegations in the complaint, they interpose what they call a “ second defense,” in which the true nature of the transaction is disclosed, and setting up a settlement at a certain date, in which all the matters were adjusted, and payment and full satisfaction. To this a replication was filed, and new issues, tendered by the defendants, were formed; these issues were tried and the identity of the original action was lost. This being the case, it was not error to refuse the nonsuit and try the issues made. That it was rather a phenomenal departure and transformation must be conceded.
One of the very few facts satisfactorily established by the evidence was that the defendant in error was greatly in debt, perhaps in excess of his assets and ability to pay. That to secure to Werkheiser $7,500 due him he had made a chattel mortgage of his stock on the range, which was about to mature, and, being unable to meet it, he made the arrangement whereby he conveyed by bills of sale to plaintiff in error and his partner, West, the cattle, horses and other property, and gave a power of attorney also, and they went into possession, at least constructive, of the property. They were to discharge the chattel mortgage, care for, herd, drive and dispose of the stock, etc., and although upon the trial it was attempted to be shown that the sale was absolute, the answer of the *396 defendants, attempted settlement, and various payments of money made from time to time to tlie plaintiff, and the delivery of certain of the property, establishes beyond controversy that the parties were not Iona fide purchasers, but trustees or agents, who, after paying’ the designated claims and themselves for care and disbursements, were to pay over the surplus to Hart. For two years following the transaction the defendant Hart gave no attention whatever to the stock. It was then the attempted settlement occurred. The plaintiff in error and his partner, West, attempted to account for all the property converted by them, and reconveyed the supposed remnant remaining on the range — but no remnant was found. Matters remained in this condition until 1885, when this suit was brought.
The evidence was very vague and unsatisfactory. At the time of the transfer Hart had no knowledge of the number, classification or kind of stock he was selling, nor did he at any subsequent time have any means of knowing the number at the time of the transfer. Air attempt was made by plaintiff upon the trial to furnish data, by which the jury could arrive at an approximate of the number of cattle, by showing the number he had turned out long before upon the range, and by some guesses of what the natural increase should be. Nothing could be more indefinite or unsatisfactory. The different adverse agencies, stealing, straying and starving, might leave the herd, after two or three years, less in number than the original stock. It of course was to the interest of the plaintiff to make the herd as large as possible, while the defendants, having to account for it, were influenced to make it small as possible. Much of the evidence of both parties was hardly admissible, but was probably allowed by the court through necessity, being the best attainable.
I am at a loss to know how the jury found any data upon which to base a verdict. It must have been from the concessions of defendants and their employees as to the amount and value of the property disposed of, and this, perhaps, was sufficient. The most that can be said of all the evidence in the case is, that it furnished the jury a basis from which they *397 could deduce conclusions. The errors assigned upon the admission and rejection of evidence are not relied upon in argument, and an examination shows that they were not serious, and that they were nearly evenly balanced. A strict application of the rules of evidence would so emasculate the case as to leave very little.
Numerous errors are assigned upon the instructions given and refused, but they are not urged in argument, nor any attempt made to show wherein they were faulty. Notwithstanding this, we have carefully examined the whole mass, given and refused, and find no serious error. The charge given by the court upon its motion, taken as a whole, seems to be eminently fair, and the law controlling the case fairly stated. The modifications of those given upon the prayer of defendants were proper and necessary — those refused were embraced in the charge by the court.
It is urged that the judge erred in declining to submit to the jury a long series of questions for special findings. This contention cannot prevail. Upon the issues made by the answer and replication, which were the only issues tried, the answers to the questions proposed, with two exceptions, could have no bearing whatever, being directed to the supposed illegal conversion of the property, a position abandoned or ignored at the outset. The exceptions were the questions, “ Was there a final settlement between plaintiff and defendants?” And “Was George E. West a party to the contract ? ” The first was fully answered by the general verdict, and the second by a verdict in his favor.
In sec. 181, Civil Code, it is provided, “ In an action for the recovery of money only or specific property, the jury, in their discretion, may render a general or special verdict.”
“ In all other cases, the court may direct the jury to find a special verdict in writing,” etc.
In the case this subsequently became, it was discretionary with the jury. The court had no power to order special findings. See Thompson v. Gregor, 11 Colo. 534.
The judgment of the district, court will be affirmed.

Affirmed.